UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────────

FREDERICK O. SILVER,

          Plaintiff,

    v.                                          21-CV-319-LJV-JJM
                                                                DECISION & ORDER
JEFFREY A. HAUSER, *et al.*,

          Defendants.

─────────────────────────────────


On February 26, 2021, the *pro se* plaintiff, Frederick Silver, commenced this

action alleging violations of the Fair Debt Collection Practices Act ("FDCPA") and Texas

state law.  Docket Item 1.  On June 1, 2021, the case was referred to United States

Magistrate Judge Jeremiah J. McCarthy for all proceedings under 28 U.S.C. §

636(b)(1)(A) and (B).  Docket Item 34.

On July 7, 2021, the defendants—Capital Management Services, LP ("CMS"),

and four of its employees—moved to dismiss the complaint under Federal Rule of Civil

Procedure 12(b)(6).  Docket Item 56.  About three weeks later, Judge McCarthy

converted that motion into a motion for summary judgment and directed Silver to

respond by October 29, 2021.  Docket Item 69.  Silver filed several other motions, *see*

Docket Items 58, 71, 73, and he appealed Judge McCarthy's order converting the

motion to dismiss into a motion for summary judgment, *see* Docket Item 72, but he

never responded to the defendants' motion.

On December 13, 2021, Judge McCarthy issued a Report and Recommendation

("R&R") finding that the defendants' motion for summary judgment should be granted.

Docket Item 79.  Silver objected to the R&R on December 27, 2021.  Docket Item 80.

The defendants responded to Silver's objection on January 19, 2022, Docket Item 82,

and Silver replied on January 27 and 30, 2022, Docket Items 84 and 85.  This Court

heard oral argument on June 27, 2022, Docket Item 93, and the parties then submitted

additional post-argument briefing, Docket Items 94 and 95.

A district court may accept, reject, or modify the findings or recommendations of

a magistrate judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).  The court must

review *de novo* those portions of a magistrate judge's recommendation to which a party

objects.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

This Court has carefully and thoroughly reviewed the R&R; the record in this

case; the objection, response, and reply; and the materials submitted to Judge

McCarthy.  Based on that *de novo* review, the Court accepts in part and respectfully

rejects in part Judge McCarthy's recommendations.  Silver's appeal of Judge

McCarthy's order converting the defendants' motion to dismiss into a motion for

summary judgment is denied.  The defendants' motion for summary judgment is granted

in part and denied without prejudice in part.  Silver's other motions are denied.

## FACTUAL BACKGROUND[1]

On March 4, 2020, CMS sent Silver a letter notifying him that "[CMS] has been

engaged by Barclays Bank Delaware to resolve [his] delinquent debt of $2043.45."

Docket Item 56-3 at 2 (capitalization removed).  That debt "stem[med] from purportedly

---

[1] The following facts are drawn from the complaint and the exhibits.  On a motion for summary judgment, the court construes the facts in the light most favorable to the non-moving party.  *See Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011).

past due payments [that Silver] is said to owe in connection with a[n] Uber Visa Card." Docket Item 1 at ¶ 18.  CMS's letter informed Silver that if he "notif[ied] [CMS] in writing within 30 days of receiving th[e] notice that [he] dispute[d] the validity of th[e] debt or any portion thereof, [CMS] w[ould] obtain verification of the debt or obtain a copy of the judgment and mail [him] a copy of such judgment or verification."  Docket Item 56-3 at 2.

Silver responded to the letter shortly after he received it and notified CMS that "[its] claim is disputed."  Docket Item 56-4 at 2.  Silver requested, among other things, "verif[ication] that [he] owe[d] the [] debt."  *Id.*  About ten months later, CMS mailed Silver a letter enclosing "the information that [he] recently requested."  Docket Item 56-5 at 2.  CMS's second letter included six months of Visa credit card statements, dating from June 2019 to January 2020.  *Id.* at 4-40.

The last credit card statement included in CMS's second letter showed that Silver owed a balance of $1,963.41 as of January 2020.  *Id.* at 36.  The cover sheet of CMS's second letter, however, reflected the $2,043.45 balance that CMS initially quoted in the March 2020 letter—that is, $80.04 more than the balance in the January 2020 credit card statement.  *Id.* at 2.  CMS's second letter did not contain any further information about—or otherwise explain—the $80.04 discrepancy.

## PROCEDURAL BACKGROUND

About a month after CMS responded to Silver's letter, Silver filed this action. Docket Item 1.  In his complaint, Silver alleges that the defendants violated the FDCPA as well as Texas statutory and common law.  *Id.*  More specifically, Silver says that the defendants violated the FDCPA by: (1) "[n]ot acquir[ing] the collection rights" to Silver's debt and "[n]ot provid[ing] any [e]vidence that [CMS] own[ed] the [d]ebt that it is

3

attempting to collect" and (2) continuing to attempt to collect the debt after inadequately responding to Silver's verification request.[2]  *Id.* at ¶¶ 19-24 (citing 15 U.S.C. § 1692c; 15 U.S.C. § 1692g).  Silver also says that the defendants violated the Texas Debt Collection Act ("TDCA") "through [their] false, deceptive, and misleading representations regarding the extent to which 'other charges' may have varied 'day to day' in the collection letter [that CMS] sent [to Silver]."  *Id.* at ¶ 31.  And Silver brings a third claim for unreasonable collection efforts under Texas common law.[3]  *Id.* at ¶¶ 34-37.

---

[2] Silver suggests that the defendants violated the FDCPA by communicating with him "without [his] prior written [c]onsent."  Docket Item 1 at ¶ 21 (citing 15 U.S.C. § 1692c).  The FDCPA prohibits debt collectors from communicating with a consumer without his or her prior consent in certain circumstances.  *See* 15 U.S.C. § 1692c(a)(1) (at unusual or inconvenient times or places); § 1692c(a)(2) (if the debt collector knows the consumer is represented by an attorney); § 1692c(a)(3) (at the consumer's place of employment).  Silver has not alleged or shown how any of those sections are relevant here, so any claim that the defendants violated the FDCPA by communicating with him without his prior consent is dismissed.

Silver also suggests that the defendants violated 15 U.S.C. § 1692c(c) when CMS did not "cease further communication . . . after receiving [Silver's] letter [requesting that CMS] cease communication [with him]."  Docket Item 1 at ¶ 24; *see also* 15 U.S.C. § 1692c(c) (prohibiting further communication from a debt collector after "a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer" except in certain circumstances).  Although this Court gave Silver the opportunity to submit proof that CMS continued to communicate with him after he asked CMS to stop, Docket Item 93, Silver did not provide any such evidence.  Accordingly, Silver's claim under 15 U.S.C. § 1692c(c) is dismissed as well.

[3] In addition to his FDCPA and Texas state law claims, Silver says that the defendants are liable under the Privacy Act, 5 U.S.C. § 552a.  Docket Item 1 at ¶ 1.  "[T]he private right of civil action created by the Privacy Act is specifically limited to actions against agencies of the United States government."  *Buch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008).  Silver has sued a private company and four of its employees, not anyone or anything affiliated with the federal government.  Docket Item 1.  So any claim under the Privacy Act is dismissed.

The defendants initially moved to dismiss Silver's complaint on April 23, 2021. Docket Item 13.  On June 17, 2021, Judge McCarthy recommended denying that motion without prejudice because the "declaration in support of the motion [was] not made under penalty of perjury" and "the letter exhibits [were] not properly authenticated."  Docket Item 42 at 1.  This Court adopted Judge McCarthy's recommendation on July 7, 2021.  Docket Item 54.

That same day, the defendants renewed their motion to dismiss.  Docket Item 56. Along with their motion to dismiss, the defendants submitted a declaration from CMS's general counsel, Docket Item 56-2, and three exhibits, Docket Items 56-3, 56-4, 56-5. Later that day, Silver filed an "emergency motion" for the United States Marshals Service to serve a subpoena on CMS's general counsel.  Docket Item 58.

Judge McCarthy then directed CMS to file further information regarding its "retention with respect to [Silver's] account."  Docket Item 63.  The defendants responded to that order on July 27, 2021, and filed "the placement notification of Frederick Silver's account from Barclays Bank Delaware to [CMS]."  *See* Docket Item 65.  Three days later, Silver filed another "emergency motion"—this one to strike that document under Federal Rule of Evidence 901.  Docket Item 73.

Judge McCarthy subsequently informed the parties that he intended to convert the defendants' motion to dismiss into a motion for summary judgment.  Docket Item 67. In the order converting the defendants' motion, Judge McCarthy held Silver's requests for subpoenas in abeyance and stayed discovery until the motion was resolved.  Docket Item 69.  But Judge McCarthy told Silver that "consistent with Rule 56(d), [he] may

identify specific discovery he allegedly require[d] in order to oppose the motion" and set a deadline for Silver to respond.  *Id.*

Immediately after Judge McCarthy issued his order converting the defendants' motion, Silver (1) filed an "emergency motion for summary judgment," Docket Item 71; (2) appealed Judge McCarthy's order converting the defendants' motion to dismiss into a motion for summary judgment, Docket Item 72; and (3) filed the "emergency motion" to strike the defendants' placement notification, Docket Item 73.  Judge McCarthy deferred ruling on Silver's two motions, Docket Items 71 and 73, until this Court decided whether to sanction Silver for misrepresenting himself in those three filings.[4]  Docket Item 74.

After the parties held oral argument before Judge McCarthy, Docket Item 78, Judge McCarthy issued an R&R finding that the defendants' motion for summary judgment should be granted and the case dismissed.  Docket Item 79.  Silver objected on December 27, 2021, Docket Item 80; his objection was fully briefed by January 30, 2022, Docket Items 80-85.  After briefing on his objection concluded, Silver filed motions "to take judicial notice" of various purported facts, Docket Item 86, and to obtain free transcripts of five proceedings before Judge McCarthy, Docket Item 87.

---

[4] Silver signed each filing, in relevant part, as "'*Without Prejudice UCC §1-308 By: /s/ Frederick O. Silver*," "I: A Man known to use the Name Frederick-Omoyuma: Silver," and "In the Interest of **FREDERICK OMOYUMA SILVER ~ Ens legis**."  Docket Item 71 at 4; Docket Item 72 at 1; Docket Item 73 at 2 (emphasis in all three originals). Previously, after Silver filed documents suggesting that he was represented by "Silver Frederick who is One of the People of the United States of America," this Court warned Silver that any further "attempt[s] to deceive the Court" could result in sanctions.  Docket Item 50.  This Court ultimately declined to sanction Silver for his July 2021 filings but warned him that sanctions could be warranted in the future.  *See* Docket Item 92.

This Court heard oral argument on Silver's objection on June 27, 2022.  Docket Item 93.  At oral argument, this Court flagged the discrepancy between the $2,043.45 balance in the collection letter and the $1,963.41 balance in the attached credit card statements and requested further briefing from the defendants on how that discrepancy affected their motion for summary judgment.  The defendants submitted a post-argument brief on July 19, 2022, Docket Item 94; Silver objected to that brief a day later, Docket Item 95.

## **LEGAL PRINCIPLES**

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant—that is, the party seeking summary judgment—has the initial burden of showing that there is no genuine dispute of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The movant may satisfy this burden by relying on evidence in the record, "including depositions, documents, . . . [and] affidavits," Fed. R. Civ. P. 56(c)(1)(A), or by "point[ing] to an absence of evidence to support an essential element of the nonmoving party's claim," *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *see* Fed. R. Civ. P. 56(c)(1)(B).  Once the movant has satisfied its initial burden, "the nonmoving party must come forward with specific facts" showing that there is a genuine dispute of a material fact.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).  If the nonmovant fails to carry this burden, the court may grant summary judgment.  *See Celotex*, 477 U.S. at 322-23.

A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "[T]he court must view the evidence in the record in the light most favorable to the non-moving party" and must draw "all reasonable inferences in that party's favor." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001). But "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).

## DISCUSSION

### I.     SILVER'S APPEAL OF JUDGE MCCARTHY'S CONVERSION ORDER

As an initial matter, Silver appealed Judge McCarthy's decision to convert the defendants' motion to dismiss into a motion for summary judgment. Docket Item 72. It is not clear why Silver appealed that order; in his filing, Silver says only that this Court should "vacate [Judge McCarthy's] [o]rder" based "on the previous [o]rder of the Court."[5] *Id.* at 1. Silver apparently argues that this Court should vacate Judge McCarthy's order converting the defendants' motion to dismiss because this Court "previous[ly] denied the [defendants'] [m]otion to dismiss." *Id.*

---

[5] Silver also argues that "statements of counsel in their briefs or argument[,] while enlightening to the Court[,] are not sufficient for purposes of granting a motion to dismiss or summary judgment." Docket Item 72 at 1 (alterations omitted) (quoting *Trinsey v. Pagliaro*, 229 F. Supp. 647, 649 (E.D. Pa. 1964)). True or not, that principle is irrelevant to Silver's appeal of Judge McCarthy's order converting the defendants' motion: In that order, Judge McCarthy did not grant the defendants' motion to dismiss or motion for summary judgment, he simply converted the former into the latter.

In this Court's prior order adopting Judge McCarthy's recommendation to deny the defendants' motion to dismiss, this Court expressly noted that Judge McCarthy "recommended that the defendants' motion . . . be denied *without prejudice*" because of "deficiencies in the defendants' papers submitted in support of that motion."  Docket Item 54 at 2 (emphasis added).  In other words, this Court's prior order did not bar the defendants from renewing their motion to dismiss and said nothing about whether the defendants later could move for summary judgment.  So if Silver is appealing Judge McCarthy's order on that ground, his argument lacks merit.

What is more, Judge McCarthy complied with the Federal Rules of Civil Procedure when he converted the defendants' motion and gave Silver an opportunity to respond.  *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").  So Judge McCarthy's decision was neither clearly erroneous nor contrary to law.  *See* Fed. R. Civ. P. 72(a) ("The district judge . . . must consider timely objections and modify or set aside any part of the [nondispositive] order that is clearly erroneous or is contrary to law."); *see also* 28 U.S.C. § 636(b)(1)(A).  Silver's appeal, Docket Item 72, therefore lacks merit, and Judge McCarthy's order converting the defendants' motion to dismiss into a motion for summary judgment is affirmed.[6]

_____

[6] Because Silver's appeal lacks merit, this Court declines any request by Silver to "certify [Docket Item] 69 [f]or [i]nterlocutory [a]ppeal."  *See* Docket Item 72; *see also* 28 U.S.C. § 1292 (providing that a district court may certify an order for interlocutory appeal if "such order involves a controlling question of law as to which there is substantial

## II.     THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Judge McCarthy recommended granting the defendants' motion for summary judgment and dismissing the case.  Docket Item 79.  More specifically, Judge McCarthy recommended dismissing Silver's FDCPA claims on the merits and declining to exercise supplemental jurisdiction over his state law claims.  *Id.*  Silver argues that CMS has "not provide[d] any proof that Barclays Bank Delaware [engaged] [the defendants] to collect on the [d]ebt" and contends that the "credit card statements are not proof," Docket Item 80 at 2, presumably arguing that CMS's January 2021 response was insufficient verification of his disputed debt.

### A.     CMS's Failure to Show its Ownership Rights in Silver's Debt

Judge McCarthy recommended dismissing Silver's FDCPA claim challenging CMS's purported failure to provide "evidence that it owns the [d]ebt."[7]  Docket Item 79 at 6-7 (quoting Docket Item 1 at ¶ 19).  In his objection, Silver maintains that the defendants "did not provide any proof that Barclays Bank Delaware [engaged]" the defendants "to collect on the [d]ebt."  Docket Item 80 at 2.  But the FDCPA does not require a debt collector to supply that information when it verifies a consumer's debt.

---

ground for difference of opinion and [where] an immediate appeal from the order may materially advance the ultimate termination of the litigation").

[7] To the extent that Silver raises an FDCPA claim based on CMS's purported failure to "acquire[] the collection rights" in Silver's debt, Docket Item 1 at ¶ 19, this Court agrees with Judge McCarthy that such a claim fails.  CMS's general counsel provided an affidavit attesting that CMS accurately informed Silver that it "had been engaged by Barclays Bank Delaware[] . . . to resolve his delinquent credit card account debt."  Docket Item 56-2 at ¶ 5.  Silver did not respond to the defendants' summary judgment motion or otherwise show how he "c[ould not] present facts essential to justify [his] opposition" to the accuracy of that assertion, *see* Fed. R. Civ. P. 56(d), so any claim alleging that CMS tried to collect a debt that it had no relationship to is dismissed.

*See Sherman v. Portfolio Recovery Assocs., LLC*, 2022 WL 952540, at *7 (S.D. Ohio Mar. 30, 2022) ("[W]hile [the p]laintiff may have sincerely believed that she was entitled to additional proof that [the defendant debt collector] had purchased her debt from [the original creditor], courts have uniformly held that the FDCPA does not require that.") (collecting cases), *report and recommendation adopted*, 2022 WL 3908944 (S.D. Ohio Aug. 30, 2022).  So Silver's argument that CMS violated the FDCPA's verification provision by failing to provide detailed evidence that it owns the debt misses the mark.[8]

For those reasons, this Court agrees with Judge McCarthy that Silver's FDCPA claim challenging CMS's failure to show ownership of the debt cannot proceed.

### B.  CMS's Verification of the Debt

Silver also alleges that the defendants did not properly verify the debt but continued to try to collect it in violation of 15 U.S.C. § 1692g(b).  *See* Docket Item 1 at ¶¶ 23-24.  Judge McCarthy found that "[t]he six months of credit card statements supplied to Silver" provided adequate verification of his debt and therefore concluded that CMS could continue to collect it.  Docket Item 79 at 4-5, 7.  This Court respectfully disagrees with Judge McCarthy.

---

[8] The defendants ultimately provided information showing CMS's relationship to Silver's debt, which Judge McCarthy found to be a "sufficient evidentiary showing [] to support [CMS's] representation in its initial March 4, 2020 letter . . . that it had been engaged by Barclays to resolve the debt."  Docket Item 79 at 7 (alterations and internal quotation marks omitted) (citing Docket Item 65).  Silver then filed an "emergency motion to strike" that document, arguing that "[t]here is no way that the letter could [] be [a]uthenticated[] . . . [u]nder Rule 901" of the Federal Rules of Evidence.  Docket Item 73 at 2.  Because that filing is not necessary to resolve Silver's claims, Silver's motion to strike is denied as moot.

Under the FDCPA, once a consumer "notifies the debt collector in writing . . . that the debt, or any portion thereof, is disputed[] . . . the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt . . . and a copy of such verification . . . is mailed to the consumer by the debt collector."[9] 15 U.S.C. § 1692g(b).  In other words, until the debt collector mails verification of the debt to the consumer, any collection must "cease."  *Id.*  "[D]istrict courts within this Circuit" that have addressed the question of what constitutes adequate verification "have concluded that at a minimum, verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed."  *Sandoval v. Credit Corp Sols. Inc.*, 2021 WL 3931352, at *5 (E.D.N.Y. Sept. 2, 2021) (alterations and internal quotation marks omitted).  Applying that standard, courts have concluded that a defendant's verification letter that attached documents showing the amount owed was sufficient under the FDCPA verification provision.  *See id.* (collecting cases).

In their motion for summary judgment, the defendants argued that CMS adequately verified Silver's debt when it "provided . . . six [] months of credit card statements which clearly identified the creditor, account number, [and] outstanding balance."  Docket Item 56-1 at 14; *see also* Docket Item 56-5 at 4-40 (six months of credit card statements).  But none of those statements shows the amount that CMS claimed Silver owed in its March 2020 letter.  In fact, the most recent statement that

---

[9] The consumer must notify the debt collector in writing that the debt is disputed "within thirty days after receipt of the notice" containing the amount of debt and other information.  *See* 15 U.S.C. § 1692g(b).  Silver's dispute letter was timely under that provision.  *See* Docket Items 56-3, 56-4.

CMS attached to its January 2021 letter reflects a balance of $1,963.41, or $80.04 less

than the $2,043.45 that CMS represented was due.  *Compare* Docket Item 56-5 at 2

(reflecting balance of $2,043.45), *with id.* at 36 (reflecting balance of $1,963.41).  And

CMS's January 2021 letter did not explain or provide any information about that $80.04

discrepancy.

        After this Court raised that discrepancy at oral argument, the defendants filed a

supplemental letter acknowledging that "[t]he[] statements did not contain the final

charge-off statement which reflects the $2,043.45 sought to be collected in the March 4,

2020 initial debt validation letter."  Docket Item 94 at 3.  The defendants attached to

their submission a seventh credit card statement, this one reflecting the final statement

balance of $2,043.45.  *Id.* at 5-9.   The defendants did not explain why that seventh

statement—which presumably would have adequately verified Silver's debt if it had

been included in the January 2021 mailing—was not also mailed to Silver.[10]

        Despite this discrepancy, the defendants nevertheless maintain that the written

verification in the cover letter of CMS's response, which reflected the claimed balance of

$2,043.45, adequately verified Silver's debt.  *See id.* at 2-3.  But at least one other court

has found that a defendant did not adequately verify a debt when it sent a letter claiming

a certain balance due but attached documents showing a difference balance.  *See Holly*

*v. Cooling & Winter, LLC*, 2017 WL 8186734, at *10-11 (N.D. Ga. Dec. 18, 2017) ("[The

d]efendant has not supported its apparent contention that where a debt collector sends

a consumer documentation of the debt that is different from the amount stated in a

---

        [10] Silver objected to this filing on the ground that it is inadmissible under various
Federal Rules of Evidence.  Docket Item 95.  Because the defendants' filing does not
change the result here, Silver's objection is denied as moot.

verification letter, it has satisfied its obligation to verify the debt under [section] 1692g(b).”), *report and recommendation adopted*, 2018 WL 11343745, at *1 (N.D. Ga. Feb. 16, 2018) (“Even if [the d]efendant’s letter by itself would have been sufficient, because of the conflicting information (in the form of a bill statement showing an amount different from the amount being sought in the verification letter), [the p]laintiff has plausibly stated a claim that verification was not adequately provided.”).  So considering only the credit card statements and verification letter that CMS sent to Silver, the defendants have not shown that CMS adequately verified the debt.

Nor have the defendants shown that CMS ceased collection of the debt after Silver’s verification request.  The defendants correctly note that there is no evidence that CMS sent Silver anything after the January 2021 letter.  *See* Docket Item 94.  So the question is “whether, by sending [that] particular letter”—i.e., the January 2021 letter—"[the] debt collector failed to ‘cease collection.’”  *Leeb v. Nationwide Credit Corp.*, 806 F.3d 895, 898 (7th Cir. 2015).

Based on that plain language in the January 2021 letter, this Court cannot conclude that CMS ceased collection of the debt.  The letter CMS sent enclosing Silver’s credit card statements expressly states that “[t]his communication is from a debt collector attempting to collect a debt” and that “any information obtained will be used for that purpose.”  Docket Item 56-5 at 2.  And the letter refers to Silver’s “obligation,” gives a number to call for “payment arrangements,” and reflects that Silver has an outstanding balance of $2,043.45.  *Id.*  In light of all that, the defendants have not shown that CMS ceased collection of the debt.  *See Leeb*, 806 F.3d at 898 (finding that a debt collector did not “cease collection” when it sent a letter “quot[ing] a ‘balance’” and “stat[ing] ‘This

communication is from a debt collector attempting to collect a debt and any information obtained will be used for that purpose.'").

Because the defendants have not shown that CMS adequately verified Silver's debt or ceased collecting on it, Silver's FDCPA claim under 15 U.S.C. § 1692g(b) may proceed.

### C.     State Law Claims

Silver also brings a claim under the TDCA and under Texas common law. Docket Item 1 at ¶¶ 29-37.  Judge McCarthy did not evaluate those claims on the merits but instead recommended declining to exercise supplemental jurisdiction over them. Docket Item 79 at 8.  Because this Court declines to dismiss all of Silver's FDCPA claims at this juncture, it turns next to whether Silver's state law claims likewise may proceed.  For the reasons stated below, they cannot.

### 1.     Texas Debt Collection Act

Silver alleges that the defendants violated various provisions of the TDCA by making "false, deceptive, and misleading representations regarding the extent to which 'other charges' may have varied 'day to day' in the collection letter" that CMS sent Silver.  Docket Item 1 at ¶ 31 (citing Tex. Fin. Code Ann. § 392.304(a)(4), (5), (8), (14), (19)).  It is not clear what representations Silver is referring to:  This Court has reviewed the letters and documents that CMS mailed to Silver and the representations that Silver says violate the TDCA do not appear anywhere in those mailings.  Silver's TDCA claim therefore is dismissed.

### 2.    Unreasonable Collection Efforts

Silver also brings a claim for unreasonable collection efforts under Texas state law.  *Id.* at ¶¶ 34-37.  "Under Texas law, unreasonable collection is an intentional tort." *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 635 (N.D. Tex. 2010) (alterations and internal quotation marks omitted).  "The Fifth Circuit has observed that the tort of unreasonable collection is intended to deter 'outrageous collection techniques.'"  *Valdez v. Cap. Mgmt. Servs., LP*, 2010 WL 4643272, at *15 (S.D. Tex. Nov. 16, 2010) (quoting *McDonald v. Bennett*, 674 F.2d 1080, 1089 n.8 (5th Cir. 1982)). Sufficiently outrageous collection techniques include:

> sending a large man to the plaintiff's home, who[,] yelling and screaming, demanded the keys to the house, and told the [p]laintiff's family to get out[]; falsely accusing the plaintiff of committing a crime to collect a debt; sending a large man to the plaintiff's home, who stood over the plaintiff shouting, shaking his finger and calling him a liar; sending a representative to the plaintiff's home, confronting and embarrassing the plaintiff's [fiancée] in front of social guests; [and] calling the plaintiff five times in one night, with the final call including a threat of personal violence.

*Id.* (alterations, internal quotation marks, and citations omitted).  "By the same token, merely making mistakes, because the defendant is inefficient, is not enough to sustain a claim of unreasonable debt collection."  *Id.*  In other words, because unreasonable collection efforts is an intentional tort, "evidence of negligence is insufficient to support a cause of action for unreasonable collection efforts."  *Narvaez*, 757 F. Supp. 2d at 636.

The conduct alleged in Silver's complaint and reflected in his correspondence with CMS falls well short of the sort of intentional conduct that courts have found to be unreasonable collection efforts.  *See Valdez*, 2010 WL 4643272, at *15.  On the contrary, the two letters that Silver received do not suggest that the defendants' actions "amount to a course of harassment that was willful, wanton, malicious, and intended to

16

inflict mental anguish and bodily harm." *Narvaez*, 757 F. Supp. 2d at 635-36.

Accordingly, Silver's claim for unreasonable collection efforts is dismissed.

### D.    Claims Against the Individual Defendants

In their motion for summary judgment, the defendants also argue that the CMS

employees named as defendants cannot be held personally liable under the FDCPA.[11]

Docket Item 56-1 at 15-16.  This Court agrees that the individual defendants are not

liable for any FDCPA violations.

"[C]ourts[] . . . have recognized that individual liability" under the FDCPA "may be

imposed where the defendant sought to be held liable personally engaged in the

prohibited conduct." *Isaac v. NRA Grp., LLC*, 377 F. Supp. 3d 211, 215 (E.D.N.Y.

2019).  And courts have found that is satisfied when the "individual defendant engaged

in some affirmative action with respect to the debt collection," including:

> where the individual defendant made repeated phone calls to the plaintiff;
> signed material documents sent to the plaintiff; made a series of abusive
> and deceptive phone messages; had final supervisory authority over the
> collection letters; acted in an abusive, harassing, and deceptive manner
> contrary to the standards of civilized society[] and contrary to the standards
> employed by others in its industry; or was the sole employee responsible
> for collecting [the] plaintiffs' debt.

*Id.* (citations and internal quotation marks omitted).

None of the evidence in this case shows that any individual defendant was

personally involved in collecting any debt.  In fact, the letters sent to Silver reflect only

that CMS was involved in the debt collection.  *See* Docket Items 56-3, 56-5.  And Silver

has not offered any specific facts to the contrary or otherwise shown why he "cannot

---

[11] Because Silver's state law claims are dismissed, those officers also are not
liable under Texas state law.

present facts essential to justify [his] opposition."[12]  *See* Fed. R. Civ. P. 56(d).  Silver's

claims against the individual defendants therefore are dismissed.

### III.   SILVER'S MOTION FOR SUMMARY JUDGMENT

Although Silver did not respond to the defendants' motion for summary judgment,

he did file an "emergency motion for summary judgment."  Docket Item 71.  In that

motion, Silver asserts that the defendants "did not provide any documentation from

Barclays Bank Delaware establishing that Barclays had retained [the defendants] to

collect the subject [d]ebt."  *Id.* at 3.  And Silver says that the documentation that the

defendants did provide—a "placement notification of Frederick Silver's account from

Barclays Bank Delaware to [CMS]," Docket Item 65 at 1—included Silver's personal

information and was filed "with malicious intent."  Docket Item 71 at 3-4.  So Silver

apparently argues that he is entitled to summary judgment on all his claims because the

document showing the defendants' relationship to Silver's debt was inadequate and

included Silver's personal information.[13]

Silver is not entitled to summary judgment on any claim challenging the

defendants' purported failure to show their relationship to Silver's debt for the same

reasons that the defendants are entitled to summary judgment on that claim.  And the

defendants' failure to redact Silver's personal information does not bear on whether

Silver "is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In other words,

---

[12] As noted above, Silver did not respond to the defendants' motion for summary judgment.

[13] That filing subsequently was sealed, and a redacted version was filed on the docket two days later.  *See* Docket Items 65, 66.

the inclusion of that information in the defendants' initial filing is not relevant to the merits of Silver's claims.  Silver's motion for summary judgment, Docket Item 71, therefore is denied.

## IV.    SILVER'S MOTION FOR SERVICE OF A SUBPOENA

Immediately after the defendants moved to dismiss but before Judge McCarthy converted that motion into a motion for summary judgment, Silver filed a motion asking this Court to order the United States Marshals Service to serve a subpoena on CMS's general counsel.[14]  Docket Item 58.  The statute authorizing *in forma pauperis* proceedings "requires the Marshals Service to serve an indigent party's subpoena."  9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2454 (3d ed.).  "A court, however, may exercise its discretion to screen such a subpoena request, relieving the [Marshals Service] of its duty when appropriate."  *Roden v. Floyd*, 2018 WL 4283040, at *1 (E.D. Mich. Sept. 7, 2018).  So a court may "review indigent parties' subpoena[s] *duces tecum* before service and [] order the Marshals Service to reject service requests in certain circumstances."  *Marcus v. Howard*, 2021 WL 1163586, at *3 (W.D.N.Y. Mar. 25, 2021).

This Decision & Order may affect Silver's discovery requests moving forward, including any purported need for the Marshals Service to serve a subpoena.  *See id.* (outlining circumstances relevant to judicial supervision over *in forma pauperis* parties' subpoenas).  In light of that, Silver's motion is denied without prejudice.  Silver may

---

[14] Judge McCarthy deferred ruling on that motion.  Docket Item 69.

renew any discovery requests, including any further requests for service of a subpoena, before Judge McCarthy.

## V.   SILVER'S MOTION FOR FREE TRANSCRIPTS

After Silver's objection was fully briefed, Silver filed a "motion to obtain the status conference hearing transcript[s] at [the] government['s] expense."  Docket Item 87.  In that motion, Silver requests free transcripts of five proceedings before Judge McCarthy.  *See id.*

"In civil litigation[,] a plaintiff is not entitled to a transcript as a matter of right."  *Horton v. Doe*, 2012 WL 400352, at *1 (D. Colo. Feb. 8, 2012).  And while Silver is proceeding *in forma pauperis* under 28 U.S.C. § 1915, "th[at] statute expressly limits the court's authority to charge the United States for transcription expenses" to situations "where the *district court* requires a transcript to review matters considered by a magistrate judge."  *Id.* (emphasis in original).  So Silver cannot obtain free transcripts of prior proceedings unless this Court requires them.

Silver's motion provides no information about his request, and he has not supplemented that filing or otherwise shown why this Court needs transcripts of the five hearings before Judge McCarthy.  Silver's motion for free transcripts, Docket Item 87, therefore is denied without prejudice.

## VI.   SILVER'S MOTION TO TAKE JUDICIAL NOTICE

On February 20, 2022, Silver filed a "motion to take judicial notice."  Docket Item 86.  "A court may take judicial notice of a fact that is 'not subject to reasonable dispute' either because it is 'generally known within the trial court's territorial jurisdiction' or because it 'can be accurately and readily determined from sources whose accuracy

cannot reasonably be questioned.'" *QED, LLC v. Faber Daeufer & Itrato, P.C.*, 2021 WL 707073, at *2 (S.D.N.Y. Feb. 22, 2021) (quoting Fed. R. Evid. 201(b)).  Silver asks this Court to take judicial notice of the following four "facts":  "(1) [that Judge McCarthy] failed to rule objection sustained or overruled [sic] on the objections of [the] plaintiff during hearings that [defense counsel] tried to introduce evidence improperly and [Judge] McCarthy allowed the evidence admitted to the [c]ourt records"; "(2) [t]hat [Judge] McCarthy[] issued an order to the Clerk of [the] Court not to issue [a] subpoena"; "(3) [t]hat the affidavits filed by [defense counsel] are subject to cross-examination under oath in a court of law"; and "(4) that [defense counsel] is subject to monetary sanctions under . . . [Federal Rule of Civil Procedure] 11(c)."  Docket Item 86 at 1.

This Court declines to take judicial notice of any of those assertions.  First, Silver does not explain which objections Judge McCarthy failed to rule on or improperly overruled, so this Court cannot take judicial notice of any of those objections or rulings. And regardless, if Silver is trying to object to Judge McCarthy's prior orders, those objections are untimely.  *See* Fed. R. Civ. P. 72(a) ("A party may serve and file objections to [a nondispositive] order within 14 days after being served with a copy."). Second, Judge McCarthy held Silver's requests for subpoenas in abeyance while the defendants' motion was pending and until Silver identified any discovery he needed to oppose the defendants' motion, Docket Item 69; that order did not direct the Clerk of the Court to do anything.[15]

---

[15] Even if Judge McCarthy did issue such an order, it is not clear what this Court's taking judicial notice of that order could or would do.

Finally, this Court declines to take judicial notice "[t]hat the affidavits filed by [defense counsel] are subject to cross-examination under oath in a court of law" or "that [defense counsel] is subject to monetary sanctions under . . . [Federal Rule of Civil Procedure] 11(c)."  Docket Item 86 at 1.  Both those assertions are akin to legal arguments, not the sort of facts that are subject to judicial notice under Federal Rule of Evidence 201.

For those reasons, Silver's motion to take judicial notice, Docket Item 86, is denied.  And this Court warns Silver that filing further frivolous motions may result in the revocation of his ECF privileges.  Much of Silver's motion is copied verbatim from his prior objection to Judge McCarthy's text order, Docket Item 48, which this Court denied on June 24, 2021, Docket Item 50.  Moreover, Silver again requests attorney's fees in connection with his motion, *see* Docket Item 86 at 4-5—a request that likewise is copied and pasted from his prior objection, *see* Docket Item 48 at 3-4—even though this Court previously denied his request for attorney's fees because he is proceeding *pro se*, *see* Docket Item 50.

When Silver requested permission to file documents electronically, he affirmed that he had "reviewed the requirements for e-filing and agree[d] to abide by them." Docket Item 4.  And when this Court granted Silver permission to file electronically, it noted that this permission could be "revoked at any time."  Docket Item 8 at 2.  If Silver continues to file frivolous motions and documents—for example, copied-and-pasted versions of motions that this Court already has denied or repeated requests for attorney's fees which he knows he cannot recover because he is proceeding *pro se*— his ECF access will be revoked.

**<u>CONCLUSION</u>**

For the reasons stated above, Silver's appeal of Judge McCarthy's order, Docket Item 72, is DENIED, and the defendants' motion for summary judgment, Docket Item 56, is GRANTED in part and DENIED without prejudice in part.[16]  Silver's other motions, Docket Items 58, 71, 73, 86, 87, are DENIED.  The Clerk of the Court shall terminate all defendants except Capital Management Services, LP, as defendants in this case.  The case is referred back to Judge McCarthy for further proceedings consistent with the referral order of June 1, 2021, Docket Item 34.


SO ORDERED.


Dated:      September 12, 2022
            Buffalo, New York


                                    <u>  /s/ Lawrence J. Vilardo          </u>
                                    LAWRENCE J. VILARDO
                                    UNITED STATES DISTRICT JUDGE

---

[16] Apparently, very little discovery has taken place in this case.  For that reason, both Silver's and the defendants' motions for summary judgment are denied without prejudice.  So while Silver's FDCPA claim may proceed at this time, that does not necessarily mean that his claim ultimately will succeed, nor does it mean that the remaining defendant is precluded from moving for summary judgment again at a later time.