UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

FREDERICK O. SILVER,

                              Plaintiff,

v.

CAPITAL MANAGEMENT SERVICES, LP,

                              Defendant.

---

**REPORT AND RECOMMENDATION AND ORDER**

**Case No. 1:21-cv-0319-JLV-JJM**

---

       Before the court are: 1) *pro se* plaintiff Frederick Silver's motion to strike affirmative defenses from defendant Capital Management Services, LP's ("CMS") answer [177][1]; 2) CMS's motion to dismiss [189]; and 3) Silver's motion to compel discovery and for sanctions [194], all of which have been referred to me by District Judge Lawrence J. Vilardo for initial consideration [34, 55, 96, 118, 131, 138].  Having considered the parties' submissions ([177, 188], [189, 192, 193], and [194, 196, 197], for the following reasons I recommend that CMS's motion be granted, and this case closed.  However, in the event that District Judge Vilardo disagrees with this recommendation, I further recommend that Silver's motion to dismiss CMS's affirmative defenses be granted in part and denied in part.  Finally, Silver's motion to compel and for sanctions is denied in its entirety.

---

[1]     Bracketed references are to CM/ECF docket entries, and page references are to CM/ECF pagination.

## BACKGROUND

Silver commenced this action on February 26, 2021 alleging violations of the Fair Debt Collection Practices Act.  Familiarity with the long history of this case, and of Silver's multiple motions, is presumed.  Following extensive motion practice, a Case Management Order was entered in this matter on February 7, 2025.  It required compliance with the mandatory disclosure requirements of Fed. R. Civ. P. ("Rule") 26(a) on or before February 28, 2025.  The deadline to complete fact discovery was June 30, 2025.

### A.    CMS's Motion to Dismiss

Prior to that deadline, CMS filed a motion to compel Silver to respond to its discovery demands.  [164].  On July 24, 2025, I granted that motion and ordered Silver to serve his responses on or before August 7, 2025.  [187] at 2-3.  I also found that, by failing to timely respond or object to CMS's discovery demands, Silver had waived his objections to those demands.  Id.

Silver did not serve responses as required.  On August 14, 2025 CMS filed its motion to dismiss for failure to prosecute (Rule 41(b)) and failure to comply with my July 24, 2025 Order (Rule 37(b)).  [189].  I ordered a briefing schedule that required Silver to respond on or before September 4, 2025.  [191].

In response, Silver filed on August 18, 2025 (by mail in an envelope post-marked August 13, 2025) purported "Answers and Objections" to CMS's interrogatories and document requests.  *See* [192, 193].  In those responses, Silver itemized several objections and stated as a blanket response to CMS's sixteen interrogatories that "no substantive information will be provided at this time" and that he would "supplement his answers if and when Defendant complies with its statutory obligations under 15 U.S.C. §1692g(b) or as otherwise ordered by the

Court".  [193] at 2.  He responded similarly to the twenty-five document requests that "no documents will be produced at this time" and that he would "supplement his responses if and when Defendant complies with its statutory obligations under 15 U.S.C. §1692g(b) or as otherwise ordered by the Court".  [192] at 2.

Silver did not otherwise respond to CMS's motion to dismiss.

**B.      Silver's Motion to Strike Affirmative Defenses**

Silver filed a motion to strike all ten of CMS's affirmative defenses. [177].  In response, CMS withdrew its fifth, sixth, seventh, and ninth affirmative defenses.  In addition, it offered to withdraw its second (failure to state a claim for actual damages) and third (failure to mitigate damages) affirmative defenses upon plaintiff's agreement that he is seeking only statutory damages.

CMS argues that its first (failure to state a cause of action for which relief may be granted and any claim is mitigated and avoided), fourth (*bona fide* error), and eighth (lack of standing) defenses should remain.  CMS does not make any argument concerning its tenth defense (reserving the right to assert additional defenses following discovery).

Plaintiff did not file any reply in further support of his motion, despite having the opportunity to do so.  *See* Text Order [178] ("[d]efendant's response to plaintiff's [177] motion to strike affirmative defenses is due by 7/21/2025.  Plaintiff's reply due by 7/30/2025").

**C.      Silver's Motion to Compel Discovery and for Sanctions**

On August 8, 2025, Silver moved to compel CMS to respond to his first request for documents and his interrogatories.  [194].  Although CMS served responses to Silver's demands on April 8, 2025 (*see* [162] at 2), he claims CMS's responses were "incomplete and

- 3 -

evasive". [194] at 2. He seeks an order compelling CMS to provide "full and complete responses to all outstanding discovery requests" and an award of costs and expenses. Id. at 3.

CMS argues that Silver's motion is untimely and moot, as a previous motion to compel was denied and Silver filed this motion well beyond the deadline for completion of fact discovery. [196], ¶1. Moreover, CMS argues that one of the specific requests raised by Silver – the assignment from Barclays to CMS – was already denied by District Judge Vilardo in previous motion practice. Id., ¶ 2 (citing Decision and Order [96] at 10-11; see also [187] (denying Silver's second motion to compel this information because it had already been decided by District Judge Vilardo).

In reply, Silver argues that CMS's account verification was inadequate, and that he is entitled to discovery on his surviving claims. He argues that "[w]ithout such discovery, [he] cannot test whether CMS's reporting and collection activities were accurate and authorized". [197], ¶4.

## DISCUSSION

I address first defendant's motion to dismiss [189], as it is potentially dispositive.

## A.    CMS's Motion to Dismiss

"[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them . . . . The right of self-representation is not a license not to comply with relevant rules of procedural and substantive law." Edwards v. I.N.S., 59 F.3d 5, 8 (2d Cir. 1995). Defendants seek dismissal pursuant to Rules 37 and 41(b).

1.      **Applicable Rules**

Rule 37, entitled "Failure to Make Disclosures or to Cooperate in Discovery;

Sanctions", provides, *inter alia*:

> "**(b) Failure to Comply with a Court Order.**
>
> \*\*\*
>
> **(2) *Sanctions Sought in the District Where the Action is Pending***
>
>      (A) *For Not Obeying a Discovery Order.*  If a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders. They may include the following:
>
>      \*\*\*
>
>      (ii) prohibiting the disobedient party from supporting or opposing designated claims . . . or from introducing designated matters in evidence;
>
>      (iii) striking pleadings in whole or in part;
>
>      \*\*\*
>
>      (v) dismissing the action or proceeding in whole or in part;
>
> \*\*\*
>
> **(c) Failure to Disclose, to Supplement an Earlier Response, or to Admit.**
>
>      **(1) *Failure to Disclose or Supplement.***  If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.  In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> \*\*\*
>
>      (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A) (i)-(vi).
>
> \*\*\*

**(d) Party's Failure to . . . Serve Answers to Interrogatories . . .**
    **(1)** ***In General.***
        (A) *Motion; Grounds for Sanctions.*  The court where the action is pending may, on motion, order sanctions if:
        ***

        (ii) a party, after being properly served with interrogatories under Rule 33 . . . fails to serve its answers, objections, or written response.
        (B) *Certification.*  A motion for sanctions for failing to answer or respond must include a certification that the movant has in good faith conferred or attempted to confer with the party failing to act in an effort to obtain the answer or response without court action.

        ***

    **(3)** ***Types of Sanctions.***  Sanctions may include any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)."

Rule 41, entitled "Dismissal of Actions" provides, *inter alia*:

**"(b) Involuntary Dismissal; Effect.**  If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule . . . operates as an adjudication on the merits".

Rule 16(f), which applies to noncompliance with scheduling and pretrial orders, is also relevant:

    **"(f) Sanctions.**
   **(1)**   ***In General.***  On motion or on its own, the court may issue any just orders, including those authorized by Rule (37(b)(2)(A)(ii)-(vii), if a party or its attorney:

    ***

        (C) fails to obey a scheduling or other pretrial order."

This rule also makes mandatory an award of attorney's fees "unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust".  Rule 16(f)(2).

- 6 -

Failure to prosecute "can evidence itself either in an action lying dormant with no significant activity to move it or in a pattern of dilatory tactics.  The latter may consist, for example, of groundless motions, repeated requests for continuances or persistent late filings of court ordered papers.  Such conduct may warrant dismissal after merely a matter of months . . . or may stretch out over a period of years."  Lyell Theatre Corp. v. Loews Corp., 682 F.2d 37, 42-43 (2d Cir. 1982).

The factors to be considered under each Rule overlap to a great extent. The Rule 37 factors include "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of noncompliance". Southern New England Telephone Co. v. Global NAPs Inc., 624 F.3d 123, 144 (2d Cir. 2010).  The same factors are used to determine whether dismissal is appropriate under Rule 16.  Houghtaling v. Downes, 2023 WL 7304954, *3 (W.D.N.Y. 2023) ("[t]he Court's resolution of Defendants' motion under Rule 16 rather than Rule 37 has minimal practical effect, however, because both Rules impose substantially the same standards"); see also Houghton v. Culver, 467 Fed. Appx. 63, 65 (2d Cir. 2012) (Summary Order) ("[i]n reviewing a district court's dismissal pursuant to Rule 16(f), therefore, the standards developed under Rule 37(b)(2) are applied").

The Rule 41(b) factors include "(1) the duration of the plaintiff's failure to comply with the court order, (2) whether plaintiff was on notice that failure to comply would result in dismissal, (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and (5) whether the judge has adequately

- 7 -

considered a sanction less drastic than dismissal". <u>Lucas v. Miles</u>, 84 F.3d 532, 535 (2d Cir. 1996).

However, since "no single factor is generally dispositive" (<u>id.</u>), they "need not each be resolved against the party challenging the district court's sanctions". <u>Southern New England</u>, 624 F.3d at 144. I address each factor below.

### 2.    Analysis of Relevant Factors

#### a)    Willfulness/Bad Faith

"[B]ad faith [is] exhibited by . . . willful violations of court orders", <u>Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.</u>, 782 F.2d 329, 345 (2d Cir. 1986), and "[w]illfulness is a voluntary, intentional violation of a known legal duty", requiring "no finding of bad purpose or evil motive". <u>United States v. Ruffin</u>, 575 F.2d 346, 354 (2d Cir. 1978).

My Decision and Order gave Silver a clear instruction to serve responses to CMS's discovery demands by August 7, 2025. [187]. Silver did not request any extension of this deadline. Nor did he request any guidance on how to respond from either the court or CMS's attorney. Instead, he mailed to the court on August 13, 2025 purported responses that affirmatively stated that he would not provide any substantive responses until "Defendant complies with its statutory obligations". [192, 193] at 2. Silver did not attempt to comply after being served with defendants' motion. *See* [190] (certificate of service by mail and through CM/ECF on August 14, 2025); *see also* [191] (Text Order directing Silver to respond to the motion to dismiss by September 4, 2025, which the court mailed to Silver).

I find that Silver willfully failed to respond to CMS's interrogatories and document requests.

### b)    Duration of Noncompliance

Pursuant to Rules 33 and 34, Silver's deadline to respond to defendants' Interrogatories and document requests was May 17, 2025. *See* [189-2, 189-3] (served April 17, 2025). He did not request an extension of the deadline. CMS therefore sent plaintiff email correspondence on June 10, 2025 requesting responses on or before June 13, 2025. [189-3]. Plaintiff did not respond, prompting CMS to file its motion to compel. [163].

Accordingly, Silver has failed to respond to defendants' discovery demands for approximately seven months. "Such conduct may warrant dismissal after merely a matter of months". Lyell Theatre Corp., 682 F.2d at 42-43. Moreover, "[s]anctions must be determined in light of the full record in the case". Id. at 43. When viewed in the context of the entire record of this case, including Silver's multiple, frivolous filings, admonitions, and his failure to keep the court apprised of his current address (by, for example, providing the court with an address in Nigeria), his "noncompliance" with court orders has stretched nearly to the beginning of this case in 2021.

### c)    Warning of Consequences

The court previously warned Silver that failure to obey the court's orders can result in dismissal. I admonished Silver on July 10, 2025 that "parties are not allowed to decide for themselves which orders they will obey" when he stated that he would not attend a telephonic conference that I ordered. [180]. My text order further cautioned that "if plaintiff does not participate in the July 23 teleconference, I will recommend that this action be dismissed". Id. Both Judge Vilardo and I have previously warned Silver that dismissal was a possible consequence of violating court orders:

- March 3, 2021 Text Order (J. Vilardo) [3] ("plaintiff shall notify the Court in writing [of] his address changes and the Court may dismiss the action if plaintiff fails to do so");

- May 4, 2023 Text Order (M.J. McCarthy) [122] ("a *pro se* litigant must inform the Court immediately, in writing, of any change of address. Failure to do so may result in dismissal of the case, with prejudice");

Silver is aware of the court's disciplinary process and the Federal Rules governing sanctions. He has previously been sanctioned for making frivolous filings, been warned that further frivolous filings could result in declaring him a vexatious litigant, had his e-filing privileges revoked for a time, and been restricted from communicating with the court via email:

- [96] at 22 ("this Court warns Silver that filing further frivolous motions may result in the revocation of his ECF privileges");

- [114] ("[g]iven that Silver's use of the ECF system is unsatisfactory and that use of the ECF system is a privilege, not a right, Silver's ECF filing privileges are hereby revoked") (internal citations omitted);

- [127] ("[p]laintiff has already been warned by this court that frivolous filings may subject him to sanction") (recommending "that this court order plaintiff to show cause why he should not be sanctioned under Rule 11);

- [130] at 6 (rescinding plaintiff's privilege to communicate with the court via email and admonishing him that "further lack of civility, candor or decorum when communicating with this court" will not be tolerated);

- [131] at 4 (ordering Silver to "show cause . . . why he should not be sanctioned");

- [134] (outlining Silver's litigation history in federal courts and recommending the court enjoin Silver from making further filings without the permission of the court);

- [136] (declining to provide plaintiff copies of filings via email);

- [140] at 2-3 (enjoining plaintiff from making further filings with the court, with some exceptions, without the court's permission).

In addition, Silver has demonstrated that he is aware of the process and penalties for violating court orders and the Rules, as he has requested that the court sanction the defendant for purportedly violating court orders and the Rules.  *See* plaintiff's Motion for Sanctions [15]; plaintiff's Motion to Compel Discovery and for Sanctions [194] (*citing* Rule 37(a)(5)).

Accordingly, I find that Silver was warned of the potential consequences, including dismissal, of violating court orders and that he was aware of those consequences.

### d)          Prejudice to Defendants

"Plaintiff's duty to [exercise] due diligence is imposed because of the strong policy favoring prompt disposition of cases. Prejudice to defendants resulting from unreasonable delay may be presumed." Lyell Theatre Corp., 682 F.2d at 43.  "The party that failed to comply with its discovery obligations bears the burden of proving that its failure was both substantially justified and harmless." Foley v. United States, 294 F. Supp. 3d 83, 101 (W.D.N.Y. 2018).

Silver did not even attempt to satisfy that burden, nor did he provide any argument to rebut the presumption of prejudice to CMS. He did not respond to CMS's motion and affirmatively stated that he will not respond to CMS's discovery demands, notwithstanding my order that he do so.  I therefore find that CMS has been prejudiced by Silver's failure to respond to its interrogatories and document requests.

### e)          This Court's Interest in Managing its Docket

"The authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot seriously be doubted."  Link v. Wabash Railroad Company, 370 U.S. 626, 629 (1962).  "The discovery process is intended to be self-executing.

And it is not the court's role, nor that of opposing counsel, to drag a party kicking and screaming through the discovery process." Chinn, 2018 WL 6738326 at *7.

"The resources of the courts would be taxed beyond endurance if more than a tiny percentage of discovery or disclosure proceedings generated disputes that judges were forced to resolve . . . . If parties could ignore Court Orders with the liberty in which plaintiff has acted, the civil justice system would suffer, and judges would have no reason to invest their energy in case management. There would be no premium placed on adherence to a schedule or a Court Order, and no incentive to manage the litigation to reduce its cost and bring justice as expeditiously as possible to each of the parties." Id.

### f)  The Availability of Lesser Sanctions

Although I have considered lesser sanctions, none are appropriate in this case. Here, plaintiff was granted permission to proceed *in forma pauperis*.  [3].  Due to Silver's limited financial circumstances, an award of attorney's fees would likely be unenforceable. Moreover, imposing any of the other relevant sanctions available under Rule 37(b)(2)(A) would lead to the same result as outright dismissal because Silver has not yet provided any discovery. Therefore, directing that facts be taken as established in the defendant's favor (subsection (i)), prohibiting Silver from using evidence that he has not already produced (subsection (ii)), or striking his Complaint (subsection (iii)), would all lead to dismissal of this action, but require additional motion practice and judicial resources.  As CMS is already prejudiced by spending time and resources to defend this matter for almost five years requiring yet another motion would only prejudice them further.  Finally, entering a default judgment against Silver (subsection (vi)), the plaintiff, is the functional equivalent of dismissing his action.

- 12 -

The remaining option for sanctions – staying proceedings until the order is obeyed (subsection (iv)) – would further prejudice CMS by denying it the certainty of a dismissal and reward Silver by keeping this matter open while he continues to violate my order to respond to CMS's discovery demands.

"[A]ll litigants, including pro ses, have an obligation to comply with court orders. When they flout that obligation they, like all litigants, must suffer the consequences of their actions." McDonald v. Head Criminal Court Supervisor Officer, 850 F.2d 121, 124 (2d Cir. 1988). Although "dismissal with prejudice is a harsh remedy to be utilized only in extreme situations", the court's "authority to invoke it for failure to prosecute is vital to the efficient administration of judicial affairs and provides meaningful access for other prospective litigants to overcrowded courts". Lyell Theatre Corp., 682 F.2d at 42. "To simply again direct plaintiff to honor her obligations under the federal rules and extant court orders would encourage rather than deter dilatoriness and recalcitrance." Chinn, 2018 WL 6738326 at *7.

"There is a natural tendency on the part of reviewing courts, properly employing the benefit of hindsight, to be heavily influenced by the severity of outright dismissal as a sanction for failure to comply with a discovery order . . . . But here, as in other areas of the law, the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 642-43 (1976).

I am cognizant of District Judge Vilardo's recent decision involving a request for sanctions against another *pro se* plaintiff in Daniels v. Daemen University, 2025 WL 1762202

- 13 -

(W.D.N.Y. 2025). There, Judge Vilardo disagreed with my recommendation to dismiss a *pro se* plaintiff's complaint as a sanction. He found that the plaintiff there "was not entirely without funds" and had "made some efforts to comply" with discovery by, for example, belatedly filing her Rule 26 disclosures after I had filed my recommendation to dismiss her case. Id. at *6. For those reasons, Judge Vilardo found that "some other sanction . . . would be fairer and more appropriate". Id.

Neither of those mitigating factors are present here. I therefore recommend that the court dismiss Silver's Complaint. However, should Judge Vilardo disagree that the sanction of dismissal is appropriate under the circumstances here, I recommend in the alternative that Silver be prohibited from introducing into evidence any information or documents responsive to defendants' interrogatories and document requests to support the claims in his Complaint. *See* Rules 16(f)(1)(C), and 37(b)(2)(A)(ii), and (d)(3).

Given my recommendation for dismissal, I further recommend that Silver's motions be denied as moot. However, in the event that this matter is not dismissed, I address each of Silver's motions below.

## B.    Silver's Motion to Strike CMS's Affirmative Defenses

CMS withdrew its fifth, sixth, seventh, and ninth affirmative defenses in response to Silver's motion to strike its ten affirmative defenses. I therefore recommend that Silver's motion be denied as moot with respect to those defenses.

CMS's remaining defenses are addressed below. Generally, motions to dismiss affirmative defenses are disfavored in the Second Circuit:

> "Motions to strike affirmative defenses under Rule 12(f) for legal insufficiency are generally disfavored and if there are questions of fact or disputed questions of law, the motion should be denied."

Board of Managers of Trump Tower at City Center Condominium v. Palazzolo, 346 F.Supp. 3d

432, 471 (S.D.N.Y. 2018) (internal quotations omitted).  Even so:

> " [A]n affirmative defense should be stricken if (1) it is not
> plausibly pled or (2) it is a legally insufficient basis for precluding
> a plaintiff from prevailing on its claims. . . . The Court must further
> consider whether the inclusion of the affirmative defense will
> prejudice the plaintiff."

Kochan v. Kowalski, 478 F.Supp.3d 440, 450 (W.D.N.Y. 2020), *citing* GEOMC CO., LTD v.

Calmare Therapeutics Incorporated,  918 F.3d 92, 97-98 (2d Cir. 2019).


    **1.**    **Failure to State a Cause of Action**

CMS's first affirmative defense is that Silver failed to "state a cause of action for

which relief may be granted, and any claim is mitigated and avoided".  [171] at 5.  Citing a case

from the Northern District of California, Silver argues that this is an improper defense that

should be raised in the context of a Rule 12(b)(6) motion, not preserved in an answer.  [177] at 2.

However, this is not the prevailing view in the Second Circuit:

> "[I]t is well settled that the failure-to-state-a-claim defense is a
> perfectly appropriate affirmative defense to include in the answer. .
> . . Although the defense is arguably redundant in that it is
> essentially a general denial, there is no prejudicial harm to plaintiff
> and the defense need not be stricken."

McCaffery v. McCaffery, 2012 WL 3260299, *6 (E.D.N.Y. 2012) (internal quotations omitted).

Accordingly, I recommend that the court deny Silver's motion with respect to the

first affirmative defense.

## 2.    Failure to State a Claim for Actual Damages

CMS's second affirmative defense is that plaintiff "failed to state a claim for actual damages in accordance with 15 U.S.C. §1692k. [171] at 5. Silver argues that this affirmative defense is "legally irrelevant" because 15 U.S.C. §1692k(a) "allows recovery of statutory damages without proof of actual harm". [177] at 2. Pursuant to that section, debt collectors who fail to comply with the FDCPA are liable for damages equal to "any actual damage" sustained by a person due to the violation and "such additional damages as the court may allow, but not exceeding $1,000". 15 U.S.C. §1692k(a).

In response, CMS offered to withdraw its second affirmative defense if Silver limited his claim for damages to statutory damages only. [188] at 4. He has not done so. Because Silver has not cited any other authority that supports dismissal of this affirmative defense, I recommend denying his motion with respect to CMS's second affirmative defense.

## 3.    Failure to Mitigate

CMS's third affirmative defense is that Silver "failed to mitigate damages, if any". [171] at 5. Silver argues that, because the FDCPA provides for statutory damages, "courts have routinely held that mitigation is not required". [177] at 2, *citing* authority from the 9th Circuit and the District of Maine. Again, CMS offered to withdraw this affirmative defense if Silver limited his claim for damages to statutory damages only. Silver did not do so. Because Silver has not cited any other authority that supports dismissal of this affirmative defense, I recommend denying his motion with respect to CMS's third affirmative defense.

4.      ***Bona Fide* Error**

CMS's fourth affirmative defense is that, "[i]f there were any FDCPA violations on the part of CMS, such violations were non-intentional and a *bona fide* error" under 15 U.S.C. §1692k(b)(c).  [171] at 5.  Silver argues that this affirmative defense, pleaded "without **any supporting facts**" is deficient, citing <u>GEOMC</u>, <u>supra</u>.  I agree.

Under the pleading standard for affirmative defenses outlined in <u>GEOMC</u>, <u>supra</u>, CMS's conclusory statement, without any supporting facts, falls short of the plausibility standard:

> "[T]his Court finds several defenses lacking . . . In defense number four, for example, Defendants plead that any violation of the law was the result of bona fide error.  But there is no indication whatsoever of what that error might be.  In short, it is not warranted by any asserted facts."

<u>Godson v. Eltman, Eltman & Cooper, P.C.</u>, 285 F.R.D. 255, 259 (W.D.N.Y. 2012); *see also* <u>Barnes v. Compass Recovery Group, LLC</u>, 2021 WL 5609221, *3 (W.D.N.Y. 2021) (Report and Recommendation), *adopted by* 2021 WL 5585938 (W.D.N.Y. 2021) ("[a] defendant seeking to plead a bona fide error defense must therefore plead sufficient factual information to put the plaintiff on notice of the mistake defendant is referencing. . . . Where, as here, there is no indication whatsoever of what the error might be, the defense is insufficiently plead").

CMS has similarly failed to plead any fact that identifies the error to which it refers.  This defense is therefore insufficiently pleaded.  I therefore recommend that plaintiff's motion be granted with respect to the fourth affirmative defense.

5.      **Article III Standing**

CMS's eighth affirmative defense is that Silver "lacks standing to bring this lawsuit".  [171] at 6.  Silver argues that he has "constitutional and statutory standing" to assert

"FDCPA violations" based on CMS's alleged conduct. [177] at 4. I agree with Silver. He alleges in his complaint that he "informed defendants to cease further communication" with him, "failed to validate the said Debt" and nonetheless "continue[d] sending letters and mails requesting that [he] call them and send payment". [1], ¶24. He alleges these acts "violated the FDCPA". Id., ¶26. After motion practice, the remaining issue is this case is whether the January 2021 letter that CMS sent to Silver "adequately verified Silver's debt" and whether, by sending that letter, CMS "failed to cease collection" on Silver's debt pursuant to 1692g(b). [96] at 14-15. The FDCPA explicitly states that "[a]n action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy". 15 U.S.C. §1692k(d).

CMS argues that this court "arguably lacks Article III standing based upon Plaintiff's current posture in the case". [188] at 5. CMS identifies no other facts to support its argument. Given that Silver's remaining claim in this case is based on a federal statute that explicitly permits enforcement in this court, I recommend that his motion to strike be granted with respect to this defense.

### 6.    Reservation of the Right to Assert Additional Affirmative Defenses

CMS's tenth and final affirmative defense "reserves the right to assert additional affirmative defenses in the event discovery indicates that they may be appropriate". [171] at 7. Silver argues that "[t]his is not an affirmative defense at all" and that the proper method to assert additional defenses is to "seek leave to amend". [177] at 4. CMS does not make any argument in opposition.

Accordingly, I recommend that Silver's motion be granted with respect to this defense. In addition, I agree that striking this defense does not preclude any future attempt to

amend the answer in accordance with Rule 15. *See* <u>Kochan v. Kowalski</u>, 478 F.Supp.3d 440, 455 (W.D.N.Y. 2020).

**C.    Silver's Motion to Compel Discovery and for Sanctions**

Silver moves for an order compelling CMS to "provide full and complete responses to all outstanding discovery requests". [194] at 3. Among the items that Silver argues he is entitled to is "[p]roof of [CMS's] legal standing and assignment/chain of title" for the debt. <u>Id.</u> at 2; *see also* [197] at 3.

CMS argues that Silver's motion for proof of ownership or assignment of the debt is moot, as that request has been rejected by the court. [196], ¶¶2-3. In addition, it argues that Silver's motion should be denied because it was filed long after the deadline for fact discovery. <u>Id.</u>, ¶1.

I agree with CMS. First, Silver's motion was filed on August 18, 2025 – more than two months after the June 30, 2025 fact discovery deadline. *See* [196] and [147], ¶3. Silver's motion is therefore not timely, and I deny it on that basis. <u>Wills v. Amerada Hess Corp.</u>, 379 F.3d 32, 50 (2d Cir. 2004) (district court's preclusion of experts was not an abuse of discretion where plaintiff disclosed them after the deadline); *see also* <u>Richardson v. City of New York</u>, 326 Fed. Appx. 580, 582 (2d Cir. 2009) (Summary Order)

Further, CMS served its responses to Silver's interrogatories and document requests on April 8, 2025. *See* [172], ¶3. The only objection raised by defendant to CMS's responses was its failure to produce the "contract or assignment agreement that authorized [CMS] from Barclays Bank Delaware to collect on behalf of Barclays Bank Delaware". [163] at 2. Silver's motion was denied as moot. As I stated in my July 24, 2025 Decision and Order, "District Judge [Vilardo] rejected this request in his September 12, 2022 Decision & Order":

"In his objection, Silver maintains that the defendants 'did not provide any proof that [Barclays] engaged' the defendants 'to collect on the debt' . . . [B]ut the FDCPA does not require a debt collector to supply that information when it verifies a consumer's debt. . . . So Silver's argument that CMS violation the FDCPA's verification provision by failing to provide detailed evidence that it owns the debt misses the mark".

[187] at 2, *quoting* [96] at 10-11.  Silver did not raise any other objections to CMS's responses to his discovery demands.

I therefore deny Silver's motion [194] in its entirety.

## CONCLUSION

For the reasons discussed, I recommend that CMS's motion to dismiss this action [189] be granted, or, in the alternative, that the court impose the sanction of preclusion of evidence as outlined above.  Should this action not be dismissed, I further recommend that Silver's motion to strike CMS's affirmative defenses [177] be granted with respect to CMS's fourth, eighth, and tenth affirmative defenses, and denied with respect to CMS's first, second, third, fifth, sixth, seventh, and ninth affirmative defenses.  Finally, I deny Silver's motion to compel and for sanctions [194].

Unless otherwise ordered by District Judge Vilardo, any objections to this Report, Recommendation and Order must be filed with the clerk of this court by January 8, 2026. Any requests for extension of this deadline must be made to Judge Vilardo. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the

magistrate judge in the first instance. <u>Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F. 2d 985, 990-91 (1st Cir. 1988).

   The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

SO ORDERED.

Dated: December 22, 2025

         /s/  Jeremiah J. McCarthy
        JEREMIAH J. MCCARTHY
         United States Magistrate Judge